CROSNER LEGAL, P.C.
Craig W. Straub (SBN 249032)
craig@crosnerlegal.com
Zachary M. Crosner (SBN 272295)
zach@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| JESSICA VU, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PATAFOODS, INC. d/b/a Amara Organic Foods, Inc.,<br><br>Defendant. | Case No. 8:24-cv-02265-DOC-KES<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**<br><br>Assigned to the Hon. David O. Carter<br>Courtroom: 10A<br><br>Date: February 10, 2025<br>Time: 8:30 a.m.<br><br>Complt. Filed: October 18, 2024 |

# **TABLE OF CONTENTS**

I.  SUMMARY OF AMARA'S TODDLER FOOD PRODUCTS ..................... 1

II. ADDITIONAL ALLEGATIONS AND AMARA'S FACTUAL
    CLAIMS ................................................................................................. 2

    A.  Amara's Advertising of the Products ................................................ 2

    B.  The Heavy Metals in the Products Are Harmful to Children .............. 3

    C.  The Testing of The Products .......................................................... 4

    D.  The Products Tested Above FDA 2025 Action Levels for Lead ........ 4

    E.  Factual Disputes Exist ................................................................. 5

    F.  Plaintiff's Purchase ..................................................................... 6

III. PLAINTIFF HAS STANDING ............................................................ 7

    A.  Plaintiff is Not Required to Test the Product Purchased .................... 7

    B.  Plaintiff has Standing Because She Purchased the Deceptively
        Advertised Products ..................................................................... 9

IV. REASONABLE CONSUMERS ARE DECEIVED ................................... 14

    A.  Rule 12(b)(6) Pleading Standard ....................................................... 14

    B.  The Reasonable Consumer Standard ................................................. 14

    C.  Loss of Money Constitutes Injury ..................................................... 14

    D.  The Products' Representations Mislead Reasonable Consumers ....... 15

        1.  The Products' Representations Are Not Puffery ...................... 16

        2.  The "Just" Statement is Not Preempted ................................. 18

        3.  Any Literally True Statements Are Misleading
            Considering the Labeling as a Whole ...................................... 19

    E.  Plaintiff Sufficiently Alleges Misrepresentation by Omission ........... 19

        1.  Plaintiff Adequately Alleges a Partial Omission Theory ......... 20

        2.  The Lead in the Products is an Unreasonable Safety
            Hazard ................................................................................. 21

Case No. 8:24-cv-02265-DOC-KES
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

3.    Plaintiff States a Claim for Active Concealment ...................21

F.    Plaintiff States UCL Claims..................................................................22

G.    Plaintiff Sufficiently Alleged Breach of Implied Warranties.............22

H.    Punitive Damages ..................................................................................22

V.    CONCLUSION .............................................................................................23<u>3</u>

Case No. 8:24-cv-02265-DOC-KES
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

# **TABLE OF AUTHORITIES**

**Cases**

*Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291 (1995) ...........22

*Anderson v. Apple Inc.*, 500 F. Supp. 3d 993 (N.D. Cal. 2020)..............................20

*Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000 (N.D. Cal. 2012)...................9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...................................................................14

*Balistreri v. McCormick & Co., Inc.*,
   2023 WL 5988600 (N.D. Cal. Sept. 13, 2023)................................................7, 12

*Barnes v. Nat. Organics, Inc.*,
   2022 WL 4283779 (C.D. Cal. Sept. 13, 2022)...................................9, 15, 17, 22

*Barnett v. Kroger Co.*, 2024 WL 2078209 (S.D. Ohio May 8, 2024) ....................12

*Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009)...........................................13

*Bland v. Abbott Lab'ys, Inc.*, 2012 WL 32577 (W.D. Ky. Jan. 6, 2012)................18

*Boswell v. Costco Wholesale Corp.*,
   2016 WL 3360701 (C.D. Cal. Jun. 6, 2106) (J., Carter) ...................................19

*Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134 (9th Cir. 2024) ..............5, 9, 10

*Boyd v. SunButter, LLC*, 2025 WL 84631 (C.D. Cal. Jan. 10, 2025),
   *adopted sub nom.*, 2025 WL 84700 (C.D. Cal. Jan. 13, 2025) ...................passim

*Boysen v. Walgreen Co.*, 2012 WL 2953069 (N.D. Cal. July 19, 2012) ...............12

*Brown v. Abbott Lab'ys., Inc.,* 2011 WL 4496154 (N.D. Ill. Sept. 27, 2011) ........18

*Brown v. Nature's Path Foods, Inc.*,
   2023 WL 2699978 (N.D. Cal. Mar. 29, 2023) ....................................................9

*Castillo v. Prime Hydration LLC*,
   2024 WL 4133815 (N.D. Cal. Sept. 9, 2024)................................................8, 22

*Doss v. Gen. Mills, Inc.*, 2019 WL 7946028 (S.D. Fla. June 14, 2019).................12

*Eminence Capital, LLC v. Aspeon, Inc.*,

    316 F.3d 1048 (9th Cir. 2003) ............................................................... 23

*Finney v. Ford Motor Co.*, 2018 WL 2552266 (N.D. Cal. June 4, 2018) .............. 18

*Fishon v. Mars Petcare US, Inc.*, 501 F. Supp. 3d 555 (M.D. Tenn. 2020) .......... 12

*Fraker v. KFC Corp.*, 2007 WL 1296571 (S.D. Cal. Apr. 30, 2007) .................... 18

*Gagetta v. Walmart, Inc.*, 646 F. Supp. 3d 1164 (N.D. Cal. 2022) ........... 10, 12, 13

*Golden W. Trading, Inc. v. BelGioioso Cheese, Inc.*,

    2010 WL 11515277 (C.D. Cal. Feb. 19, 2010) ................................................. 18

*Grausz v. Hershey Company,* 691 F.Supp.3d 1178 (S.D. Cal. Sept. 11, 2023) ........ 8

*Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074 (N.D. Cal. 2017) .................. 19

*Haggerty v. Bluetriton Brands, Inc.*,

    2022 WL 17733677 (D.N.J. Dec. 16, 2022) ...................................................... 11

*Hammerling v. Google LLC*, 615 F. Supp. 3d 1069 (N.D. Cal. 2022) ............ 14, 20

*Henderson v. J.M. Smucker Co.*, 2011 WL 1050637 (C.D. Cal. Mar. 17, 2011) ... 19

*Herrington v. Johnson & Johnson Consumer Cos., Inc.*,

    2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ...................................................... 12

*Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013) ...................................... 15

*Hodsdon v. Mars*, *Inc.*, 891 F.3d 857 (9th Cir. 2018) ............................................ 20

*Holt v. Globalinx Pet, LLC*,

    2013 WL 3947169 (C.D. Cal. July 30, 2013) (J., Carter) .................................. 17

*In re Ferrero Litig.*, 794 F. Supp. 2d 1107 (S.D. Cal. 2011) ............................... 19

*In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*,

    2022 WL 10197651 (E.D. Va. Oct. 17, 2022) ............................................ 11, 12

*In re Hair Relaxer Mktg. Sales Pracs. & Prods. Liab. Litig.*,

    2024 WL 4333246 (N.D. Ill. Sept. 27, 2024) .................................................... 11

*In re Lindt & Sprungli (USA), Inc., Dark Chocolate Litig.*,

-iv-

2024 WL 4107244 (E.D.N.Y. Sept. 6, 2024) ...........................................15, 16, 20

*In re Plum Baby Food Litig.*, 2022 WL 16640802 (N.D. Cal. Jan. 12, 2022) ........11

*In re Plum Baby Food Litig.*, 637 F. Supp. 3d 210 (D.N.J. 2022) ..........................11

*In re Theos Dark Chocolate Litigation*,

2024 WL 4336631 (N.D. Cal. Sept. 27, 2024) .............................................15, 17

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs. & Prods.*

*Liab. Litig.*, 754 F. Supp. 2d 1208 (C.D. Cal. 2010) ..........................................18

*In re Trader Joe's Co. Dark Chocolate Litig.*,

726 F. Supp. 3d 1150 (S.D. Cal. 2024) .............................................................10

*Kimca v. Sprout Foods, Inc.*, 2022 WL 1213488 (D.N.J. Apr. 25, 2022) .............10

*Koronthaly v. L'Oreal USA, Inc.*, 2008 WL 2938045 (D.N.J. July 29, 2008)........11

*Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938 (N.D. Cal. 2017) ...........16

*Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496 (2003) .............................14

*Levy v. Hu Prods. LLC*, 2024 WL 897495 (S.D.N.Y. Mar. 1, 2024).................8, 15

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008).......14

*McGee v. S-L Snacks Nat'l*, 982 F.3d 700 (9th Cir. 2020) ....................................13

*Pels v. Keurig Dr. Pepper, Inc.*,

2019 WL 5813422 (N.D. Cal. Nov. 7, 2019) .......................................................8

*Precht v. Kia Motors Am., Inc.*,

2015 WL 12684342 (C.D. Cal. Apr. 8, 2015) (J., Carter)..................................21

*Reitman v. Champion Petfoods USA, Inc.*,

2019 WL 1670718 (C.D. Cal. Feb. 6, 2019) (J., Carter)....................................17

*Rhodes v. Biomet, Inc.*,

2020 WL 1941078 (C.D. Cal. Feb. 3, 2020) (Carter, J.)....................................22

*Rice-Sherman v. Big Heart Pet Brands, Inc.*,

2020 WL 1245130 (N.D. Cal. Mar. 16, 2020) ................................................7, 8

*Rodriguez v. Mondelez Glob. LLC*, 703 F. Supp. 3d 1191 (S.D. Cal. 2023) ...passim

*Scheibe v. Fit Foods Distribution, Inc.*,

    2023 WL 7434964 (S.D. Cal. Nov. 8, 2023)........................................................8

*Solis v. Coty, Inc.*, 2023 WL 2394640 (S.D. Cal. Mar. 7, 2023) .......................8, 12

*Stiner v. Brookdale Senior Living, Inc.*,

    2023 WL 2722294 (N.D. Cal. Mar. 30, 2023) ......................................................7

*Tristan v. Bank of Am.*, 2023 WL 4417271 (C.D. Cal. June 28, 2023)..................17

*Vavak v. Abbott Lab'ys, Inc.*, 2011 WL 13130493 (C.D. Cal. Mar. 7, 2011)...........8

*Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025 (8th Cir. 2014) ............................8

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) .........................14, 16

*Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837 (N.D. Cal. 2018) .......................10, 13

**Statutes**

Consumers Legal Remedies Act ("CLRA") Cal. Civ. Code §§ 1750 *et seq.* ...........2

Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq*...........2

**Other Authorities**

Baby Food Safety Act, H.R. 2229, 117th Cong. § 4 (March 26, 2021)....................5

Plaintiff Jessica Vu submits this opposition to Defendant's ("Amara") motion to dismiss Plaintiff's Complaint. *See* ECF 19 ("MTD"). The Declaration of Craig W. Straub is filed concurrently ("Straub Decl.").

## I.    SUMMARY OF AMARA'S TODDLER FOOD PRODUCTS

This consumer protection action involves Amara's "Yogurt Snack" products made for infants and toddlers. Amara calls them "Amara Organic Smoothie Melts." The packaging states the Products are designed for children once they can "sit up independently." Complt., ¶ 21. The packaging makes express and implied promises that the Products are healthy, nutritious, "only" contain the "highest quality fruits and veggies," and are free from additives and harmful substances. They are not.

The Products contain high levels of *lead* as well as *cadmium, and arsenic* which are harmful to human health (especially young children), so they are not nutritious and are not made from the "highest quality" ingredients. The World Health Organization (WHO), The Centers for Disease Control (CDC), and Food and Drug Administration (FDA) all agree "*There is no level of exposure to lead that is known to be without harmful effects*." *See* ¶¶ 2-4.

The FDA's Final Guidance created "Action Levels" at 10 ppb for lead in processed food intended for young children. Straub Decl., Ex. A ("FDA 2025 Final Guidance")). The Products contain **two three to three times** above the Action Levels. Complt., ¶¶ 9, 24.[1] The Products are subject to the Action Levels because they are processed foods labeled as "Yogurt" and contain a mixture of fruits, vegetables and coconut milk. Straub Decl., Ex. A at 9. In attempt to distance itself, Amara argues the Products are "Freeze-Dried Puffs" that are excluded from complying with the Guidance. MTD at 5. Amara also claims the Products are made with "only organic

---

[1] Representative testing was contained on two of the five Products. This is sufficient at this stage of the litigation. *See infra*, § III.A.

fruits and vegetables, free of additives." MTD at 1. This conflicts with the allegations and the Product's label and is merely unsubstantiated conjecture.

Amara also asserts the lead in the Products is "unavoidable," so the label's representations about quality and nutritiousness is not deceptive. *See id.*    There are numerous other toddler food products on the market without heavy metals. *See* ¶ 50. For instance, the FDA tested nearly a thousand foods for young children over a period of 16 years, including dozens of comparable fruit and mixture products for lead. Straub Decl., Exs. B-C. ***None of the comparable foods tested as high as Amara's Products, and 58 of them contained no lead***. *Id.*

No reasonable consumer would buy the Products for their young children, if they knew they contained harmful ingredients such as lead, cadmium, and arsenic. Accordingly, Plaintiff alleges violations of the Consumers Legal Remedies Act ("CLRA") Cal. Civ. Code §§ 1750 *et seq*. and Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq*. and breach of implied warranties.

## II.    ADDITIONAL ALLEGATIONS AND AMARA'S FACTUAL CLAIMS

### A. Amara's Advertising of the Products

Amara is the manufacturer of infant and toddler food products, marketed to children between the ages of five months to three years. Complt., ¶ 18.  The Amara brand was founded to "create the best, tastiest, healthiest food on the market to support a lifetime of healthy eating." *Id.*   Consumers recognize the brand as a provider of healthy and nutritious foods for infants and toddlers. *Id.*

The Products are the same. ¶ 1. The label is provided in full at ¶ 21 (pages 8-9) of the complaint.[2] The label states the Products are "Yogurt" and depicts colorful

---

[2] On page three of Amara's Motion there are supposed images of the packaging. Amara cites Plaintiff's complaint as support, but the images displayed by Amara are different. The image does not contain the "yogurt snack" and is not in the record. *See* Straub Decl., ¶ 6. The image should be stricken.

fruits and vegetables. The label states the contents of the Products are made with the "highest quality veggies and fruits with NO ADDED SUGAR!"; "free of additives and preservatives"; have a "nutrient protection technology"; "You're already the best parent—now you have the snacks to prove it."; "We believe parents shouldn't have to choose between nutrition and convenience. You—and your child—deserve both."; "Organic"; "Non-GMO"; and the Products "just" contain fruits, vegetables, and coconut milk. ¶¶ 20-21. These statements give reasonable consumers the net impression the Products are nutritious, healthy, and contain the highest quality ingredients and, thus, do not contain heavy metals. ¶ 19.

**B. The Heavy Metals in the Products Are Harmful to Children**

The Products contain lead at levels where federal and scientific organizations have stated are a risk to children's health. ¶¶ 26-28, 39. The Products contain cadmium and arsenic at levels which are not healthy for children to consume. ¶¶ 29-38. The WHO, CDC, and FDA conclude there are no safe levels of lead for young children. ¶ 2-4, 26. This is because lead negatively affects numerous organs and neurological functions. ¶ 5. "Even very low levels of lead consumption can lead to learning and behavior problems, as well as symptoms such as loss of appetite, feeling tired or irritable, poor growth, nausea and vomiting, constipation, stomach pain, joint pain and muscle weakness, and headaches." ¶ 27. "Lead alters very basic nervous system functions, like calcium-modulated signaling, at very low concentrations in vitro." ¶ 28. More concerning is the "age of 2 years, when lead levels often peak, is the same age at which a major reduction in dendrite connections occurs, among other events crucial to development." *Id.*

Cadmium is a cancer-causing agent and "toxic heavy metal". ¶¶ 29-30, 37. Its consumption leads to developmental, reproductive toxicity, and decreases in bone mineral density. ¶ 35. Arsenic is a risk to children at the level present in the Products.

¶¶ 31, 33, 37. "Arsenic in children is a carcinogen and early-life exposures, including prenatal exposures, are especially dangerous." ¶ 33.

Further, the nutritional content of the Products is non-existent. *See* ¶ 10 (vitamins and minerals only range from 0% to 4% of the daily value). The Products contain "coconut milk" which is "Not Recommended" for children. ¶ 11.

## C. The Testing of The Products

The complaint does not rely on a third-party blog as Amara contends. Plaintiff relies on validated test results from a certified laboratory. ¶ 25. The test results were published in full on the Lead Safe website and displayed in the complaint. ¶ 24. The test results revealed that the Mighty Sweet Green Products contain more than <u>35 ppb of lead</u>, 101 ppb of cadmium, and 28 ppb of arsenic. ¶ 8. A second round of testing found the Carrot Raspberry Products contained <u>20 ppb of lead</u>, 31 ppb of cadmium, and 11 ppb of arsenic. *Id.* "These test results are applicable to all the Products as they contain the same or similar ingredients that are sourced from the same areas and the Products are packaged in the same facility." *Id.*

## D. The Products Tested Above FDA 2025 Action Levels for Lead

The FDA 2025 Final Guidance sets "Action Levels" for lead at 10 ppm for foods intended for young children. Straub Decl., Ex. A; *see also* Complt., ¶ 39. The report states the Action Levels "are levels at which FDA may regard a food as adulterated[.]" Straub Decl., Ex. A at 3. The report states: "No safe level of lead exposure has been identified for protecting children's health." *Id.* at 5.

The Guidance applies to "processed food" defined as "packaged food (e.g., in jars, pouches, tubs, or boxes) represented or purported to be for babies and young children less than two years old. It may include ready-to-eat foods (e.g., purees) as well as semi-prepared foods (i.e., dry infant cereals)." *Id.* at 3. The Action Levels for "fruits, vegetables (excluding single-ingredient root vegetables), mixtures

(including grain- and meat-based mixtures), yogurts, custards/puddings, and single-ingredient meats" are **10 parts per billion (ppb)**. *Id.* at 3-4. The Products state they are a "Yogurt" and Amara admits they are "Just Fruits and Vegetables." MTD at 3.

In 2021, the Baby Food Safety Act, H.R. 2229, 117th Cong. § 4 (March 26, 2021) was introduced. *See* Complt., ¶ 38. It set action levels for arsenic at 10 ppb, cadmium at 5 ppb, and lead at 5 ppb for "infant and toddler food."[3] *Id.* at 4. The Products test 3 to 20 times above these "action levels." Complt., ¶ 9. Amara argues the Act "never became law." MTD at 14. However, the Act provides persuasive guidance that the levels of the heavy metals in the Products are not safe for children as it was introduced to "limit the presence of toxic elements" in infant and toddler food. *Id.* at 1.

### E. Factual Disputes Exist

Amara contests these facts by selectively quoting FDA reports and websites. MTD at 4-6. It argues heavy metals are safe at low levels and cannot be avoided "in fruits, vegetables, or grains that are the basis for baby foods, juices, and infant cereals," but at the same time claims that the Products are just "freeze-dried puffs."

A similar situation was present in *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134 (9th Cir. 2024) which involved sunscreens alleged to contain trace levels of benzene. *Id.* at 1149. Plaintiff alleged "there is not a safe level of benzene" but tests showed the products were below FDA guidelines. *See id.* at 1148-49. Like here, the parties submitted inconsistent comments from the FDA reports at issue. *Id.* The Ninth Circuit held that "contested evidence" must be viewed most favorable to the nonmoving party (the plaintiff) and that the district court erred by dismissing the

---

[3] Amara claims these levels are for "bottled water." The action levels reported in the chart in ¶ 9 refer to the Baby Food Safet Act. Amara miscalculated the bottled water regulations. The limit is 5 "ppb," not "ppm." *See* MTD at 8.

complaint. *Id.* Amara also argues the heavy metals in its Products are "naturally occurring." Plaintiff alleges Amara negligently allowed the heavy metal contamination. Complt., ¶ 46. This contested fact also warrants denial of Amara's Motion under *Bowen.*

### F. Plaintiff's Purchase

Plaintiff purchased multiple flavors of the Products in California during the class period. ¶ 40. On April 3, 2023, Plaintiff purchased the Beets n' Berries flavor for $32.99 and the Mango Carrot flavor for $32.99 from amazon.com. *Id.* Plaintiff also purchased the Mixed Red Berries and Carrot Raspberry flavored Products during the class period in California. *Id.* When purchasing the Products, Plaintiff was not aware of the heavy metals in the Product. ¶ 41.

After reading the label, Plaintiff purchased the Products on the assumption the labeling was accurate, and the Products did not contain harmful substances like lead, cadmium, or arsenic and that the Products were healthy. *Id.* Plaintiff specifically relied on the labeling statements "Organic"; "Non-GMO"; "No added sugar!"; "highest quality"; "You're already the best parent—now you have the snacks to prove it."; "We believe parents shouldn't have to choose between nutrition and convenience. You—and your child—deserve both."; and the Products "just" contain fruits and veggies. ¶ 44. This gave Plaintiff the net-impression the Products do not contain harmful ingredients like lead, cadmium, and arsenic. *Id.*

Plaintiff would not have purchased the Products had she known they contained substances which are known to be hazardous to children's health and are not nutritious and not healthy for young children. ¶ 42. As a result, Plaintiff suffered injury in fact when she spent money to purchase the Products she would not have purchased absent Amara's deceptive practices. *Id.* Further, had Plaintiff known about the heavy metals, she would have purchased a different product since there are

numerous other toddler food products on the market without heavy metals. *See* ¶ 50; *see also* Straub Decl., Ex. B-C.

## III.   PLAINTIFF HAS STANDING

"'[W]hen the consumer alleges that he would not have made the purchase but for the misrepresentation, he has standing to sue . . . because he has suffered an economic injury.'" *Stiner v. Brookdale Senior Living, Inc.*, 2023 WL 2722294, at *18 (N.D. Cal. Mar. 30, 2023).[4]

Allegations that "Heavy Metals have been found in the Products, any level of Heavy Metals is unsafe, and they would not have purchased the Products had they known they contained (or risked containing) Heavy Metals[,]" are sufficient to confer standing. *Balistreri v. McCormick & Co., Inc.*, 2023 WL 5988600, at *5 (N.D. Cal. Sept. 13, 2023).

### A. Plaintiff is Not Required to Test the Product Purchased

Amara argues Plaintiff lacks standing since she did not test the Products she purchased. MTD at 10-13. Plaintiffs are not "required to specifically allege that the particular product they bought contained the undisclosed ingredients." *Rice-Sherman v. Big Heart Pet Brands, Inc.*, 2020 WL 1245130, at *6 (N.D. Cal. Mar. 16, 2020). Recently, Judge Wu rejected this argument holding, "the wealth of authority on the subject suggests that Plaintiffs need not test the particular sample they consumed, but need only plausibly allege that they were exposed to the chemical at issue." *Boyd v. SunButter, LLC*, 2025 WL 84631, at *4 (C.D. Cal. Jan. 10, 2025), *adopted sub nom.*, 2025 WL 84700 (C.D. Cal. Jan. 13, 2025).

Numerous courts follow this reasoning. *Rodriguez v. Mondelez Glob. LLC*, 703 F. Supp. 3d 1191, 1205 (S.D. Cal. 2023) ("Plaintiffs need not allege that the

---

[4] All internal quotations, brackets, ellipses, and citations are omitted unless otherwise stated.

specific Products they purchased had 'unsafe levels' of lead and/or cadmium'") (quoting *Solis v. Coty, Inc.*, 2023 WL 2394640, at *11 (S.D. Cal. Mar. 7, 2023)); *Levy v. Hu Prods. LLC*, 2024 WL 897495, at *3-5 (S.D.N.Y. Mar. 1, 2024) (same); *Grausz v. Hershey Company,* 691 F.Supp.3d 1178, 1188 (S.D. Cal. Sept. 11, 2023) (same); *Castillo v. Prime Hydration LLC*, 2024 WL 4133815, at *2 (N.D. Cal. Sept. 9, 2024) (same); *Rice-Sherman v. Big Heart Pet Brands, Inc.*, 2020 WL 1245130, at *7 (N.D. Cal. Mar. 16, 2020) (plaintiffs need not test "all" versions of the products).

Amara's reliance on a case about kosher hot dogs where only *some* hot dogs were not kosher is off point. *See* MTD at 9-11 (citing *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014)). Amara's citation to *Pels v. Keurig Dr. Pepper, Inc.*, 2019 WL 5813422, at *4-5 (N.D. Cal. Nov. 7, 2019) is inapposite because the plaintiff "failed to allege that all products were falsely advertised." *Rice-Sherman,* 2020 WL 1245130, at *7. *Vavak v. Abbott Lab'ys, Inc.*, 2011 WL 13130493 (C.D. Cal. Mar. 7, 2011) involved beetles in *some* products since the infestation was only at one facility. *Id.* at *1. Courts have distinguished *Vavak* and *Pels* because they "stand for the uncontroversial proposition that it is not reasonable to infer that because certain shipments of a product contained an unintended defect, all units of that product contained said defect." *Scheibe v. Fit Foods Distribution, Inc.*, 2023 WL 7434964, at *15 (S.D. Cal. Nov. 8, 2023).

Amara oddly relies on the <u>district court</u> decision in *Bowen*. MTD at 11. The case was overturned by the Ninth Circuit:

> [T]he district court mistakenly required Bowen to show that Banana Boat was noncompliant with FDA guidelines in order to establish injury under an economic-harm theory. Second, to reach the conclusion that 0.29 ppm of benzene in sunscreen is 'safe,' the district court improperly weighed disputed evidence.

*Bowen*, 118 F.4th at 1146.

Next, Amara makes factual arguments about different ingredients and that Plaintiff cannot bring claims for flavors of the Products she did not purchase. However, "'a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar.'" *Brown v. Nature's Path Foods, Inc.,* 2023 WL 2699978, at *4 (N.D. Cal. Mar. 29, 2023). If the products are sufficiently similar, any differences should be addressed at class certification. *Id.* (citing *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012)). Here, each of the Products are substantially similar because they contain the same ingredients (fruits, vegetables and coconut milk), make the same labeling statements, and are alleged to contain heavy metals. Complt., ¶¶ 8, 20.

### B. Plaintiff has Standing Because She Purchased the Deceptively Advertised Products

Plaintiff relied on the Products' label when purchasing them and would not have purchased the Products if the heavy metals had been disclosed. Complt., ¶¶ 40-42. She alleges that the levels of lead in the Products are above FDA Action Levels and that no amount of lead is safe for young children to consume. *Supra*, § II.C.-D. Had Plaintiff known about the heavy metals, she would have purchased a different product for her child since there are numerous other products on the market without heavy metals. *See* ¶ 50; *see also* Straub Decl., Ex. B-C.

Controlling law holds these allegations satisfy standing. *Bowen,* 118 F.4th at 1146 (allegation would not have purchase sunscreen had she "known that any amount of benzene was or risked being" in the product confers standing); *see also Barnes v. Nat. Organics, Inc.*, 2022 WL 4283779, at *4 (C.D. Cal. Sept. 13, 2022) ("[T]he inclusion, or risk of inclusion, of Heavy Metals was not disclosed on the

-9-

label, and if it had been, she would not have paid for the Prenatal Vitamins. . . caselaw squarely supports [] standing."); *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 846 (N.D. Cal. 2018) (standing met with "allegations that were it not for defendants' labeling, which omit the presence of lead, arsenic, and BPA in their Products, plaintiffs would not have purchased and spent money on their Products"); *Gagetta v. Walmart, Inc.*, 646 F. Supp. 3d 1164, 1174 (N.D. Cal. 2022) ("[P]laintiffs establish economic injury by alleging they would not have purchased the spices or would have paid less had they known the products *risked* containing heavy metals.").

**First**, Amara argues Plaintiff failed to allege the levels of heavy metals in the Products are harmful so there is no economic injury. MTD at 13. This factual assertion conflicts with the allegations and controlling law. *Bowen*, 118 F.4th at 1146. As detailed *supra*, Plaintiff alleges there are no safe levels of lead, and the Products tested well above the FDA 2025 Guidance Action Levels for lead.[5] *Supra*, § II.B-D. The Ninth Circuit holds when "there is inconsistency" as to whether a product is "safe," the contested evidence is viewed in the light most favorable to the nonmoving party which, here, is Plaintiff. *Bowen*, 118 F.4th at 1148; *see also Gagetta*, 646 F. Supp. 3d at 1173 (holding "whether these levels of metals are safe is a hotly contested issue of fact … inappropriate to resolve on a motion to dismiss"); *In re Trader Joe's Co. Dark Chocolate Litig.*, 726 F. Supp. 3d 1150, 1168 (S.D. Cal. 2024) ("[D]etermining what that level would be for a reasonable consumer is not amenable to resolution on a motion to dismiss.")

Amara relies on out-of-circuit opinions which conflict with Ninth Circuit law. Amara cites *Kimca v. Sprout Foods, Inc.*, 2022 WL 1213488 (D.N.J. Apr. 25, 2022). That court noted "representative testing" can establish injury but held "established

---

[5] Even if the FDA 2025 Guidance does not apply, Plaintiff still has standing and states a claim. *Bowen* notes that inconsistencies in FDA guidance raises disputes of material fact that must be resolved in favor of Plaintiff. *Bowen,* 118 F.4th at 1148.

standards" cited by plaintiff did not apply to baby food, so the action was dismissed without prejudice. *See id.* at \*1, 4-6. Here, the FDA 2025 Action Levels for lead and action levels under the Baby Food Safety Act apply to the same category of foods as the Products. The only California court that relies on *Kimca* is the district court in *Bowen* which was overturned by the Ninth Circuit. *See supra*. *Koronthaly v. L'Oreal USA, Inc.*, 2008 WL 2938045 (D.N.J. July 29, 2008) involved lipstick which is not "directly ingested," so it is not persuasive. *Id.* at \*5.

Unlike California courts, the District of New Jersey holds that "but-for" allegations are not sufficient. *Haggerty v. Bluetriton Brands, Inc.*, 2022 WL 17733677, at \*4 (D.N.J. Dec. 16, 2022) (following *In re Plum Baby Food Litig.*, 637 F. Supp. 3d 210, 225 (D.N.J. 2022)). Thus, *In re Plum, Kimica*, and *Koronthaly* should be given little-to-no weight.[6] More persuasive is the Northern District's opinion holding: "the Court finds that plaintiffs have adequately alleged an injury in fact by alleging that they 'would have not paid the purchase price or the price premium' had they known that the Baby Foods included levels of Heavy Metals, perchlorate, and/or undesirable toxins or contaminants.'" *In re Plum Baby Food Litig.*, 2022 WL 16640802, at \*1 (N.D. Cal. Jan. 12, 2022).

*In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*, 2022 WL 10197651 (E.D. Va. Oct. 17, 2022) should not be followed. Courts have distinguished the case because the plaintiffs' "only basis for their alleged harm was future harm." *In re Hair Relaxer Mktg. Sales Pracs. & Prods. Liab. Litig.*, 2024 WL 4333246, at \*3-4 (N.D. Ill. Sept. 27, 2024) (allegations plaintiffs "would not have purchased" the

---

[6] The court in *In re Plum* noted there were no allegations the products were "advertised as 'superior to' other products." *In re Plum*, 637 F. Supp. 3d at 225. Here, Plaintiff alleges Amara holds itself out as "healthiest food on the market" and that the Products are of the "highest quality." Complt., ¶¶ 18-19. The complaint quotes consumers stating they thought of Amara as a "better brand." *Id.*, ¶ 23. Further, FDA testing shows there are numerous foods like the Products that do not contain lead. Straub Decl., Ex. B-C.

products had they "been aware of the unsafe nature" confer standing); *Barnett v. Kroger Co*., 2024 WL 2078209, at *5 (S.D. Ohio May 8, 2024) (*In re Gerber* plaintiffs did not allege a misrepresentation of the "quality of product"). Amara cites *Doss v. Gen. Mills, Inc*., 2019 WL 7946028 (S.D. Fla. June 14, 2019) which found no standing because the product purchased was not tested and only "some" of the products were contaminated. *Id.* at *2. The case is not followed or distinguished by other courts. *Solis*, 2023 WL 2394640, at *11; *Fishon v. Mars Petcare US, Inc*., 501 F. Supp. 3d 555, 565 (M.D. Tenn. 2020) ("[T]he Court does not find *Doss* persuasive here."); *Morris v. Walmart Inc*., 2022 WL 1590474, at *4 (N.D. Ala. Mar. 23, 2022) (distinguishing *Doss* and holding plaintiff "testified she would not have bought them if she had known what she was getting. This confers standing.")

    *Herrington v. Johnson & Johnson Consumer Cos., Inc*., 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) concerned bath products and is off point since the plaintiffs only alleged the products "have not been proven safe." *Id.* at *1. The FDA had also declared that the 1,4-dioxide at issue was not a safety hazard. *Id.* at *3 n.2. Here, plaintiff alleges the amount of lead in the Products is affirmatively shown to not be safe. *Supra*, § II.B-D. Courts note that *Herrington* is distinguishable. *See e.g., Balistreri*, 2023 WL 5988600, at *5 ("The Court finds *Herrington* distinguishable. Here, Plaintiffs allege that the Products they purchased in fact contained (or risked containing) Heavy Metals, which Plaintiffs allege have been proven unsafe at any level."); *Gagetta*, 646 F. Supp. 3d at 1175 ("The 'actual economic harm,' then, is that they overpaid for products that they did not know risked containing these metals, which they allege are unsafe at any level . . . *Herrington* is distinguishable.").

    Amara asks the Court to follow *Boysen v. Walgreen Co*., 2012 WL 2953069 (N.D. Cal. July 19, 2012) which involved fruit juice that contained lead at levels *below* the "FDA advisory guideline levels for fruit juices." *Id.* at *5. Here, Plaintiff alleges the Products exceed FDA guidance and that the labels are independently deceptive. Courts distinguish *Boysen* because the plaintiff failed to allege a risk of

-12-

harm and did not allege a material omission. *See e.g., Gagetta*, 646 F. Supp. 3d at 1174 (distinguishing *Boysen* and holding "plaintiffs establish economic injury by alleging they would not have purchased the spices or would have paid less had they known the products *risked* containing heavy metals. This theory of injury . . . does not require the plaintiffs to show they were physically injured by the defendant's products because it relies on the defendant's alleged failure to provide all relevant information to purchasers"); *Zeiger*, 304 F. Supp. 3d at 847 ("This case is distinguishable. . . . claims in this matter are not solely based on the theory that defendants' Products are unsafe due to the presence of arsenic, lead, and BPA, but also that those products omit on their labeling their presence altogether.").

**Second**, Amara claims Plaintiff should have assumed there were heavy metals in the Products because the labeling did not mention anything about heavy metals, and thus, Plaintiff received the benefit of the bargain. MTD at 14. In support, Amara claims it is not possible to sell food without heavy metals. This is not true. Other similar toddler food products <u>do not</u> contain lead. *See supra*, §§ I, II.E-F; Complt., ¶ 50. The FDA has tested numerous baby foods that did not contain any detectable levels of lead. *See* Straub Decl., Ex. B-C. This argument also misconstrues the allegations. Plaintiff alleges the Products are represented as nutritious and the undisclosed heavy metals in the Products makes them misleading.

Amara cites *McGee v. S-L Snacks Nat'l*, 982 F.3d 700 (9th Cir. 2020). In *McGee*, the plaintiff alleged popcorn was not safe to consume since it contained trans fats. The Ninth Circuit affirmed dismissal because, in part, the label disclosed it "contained artificial trans fat" and the plaintiff conceded the disclosure. *Id.* at 706-07. Unlike here, *McGee* did not allege any "false representations—or actionable non-disclosures[.]" *Id.* at 707. Amara also relies on *Birdsong* which involved iPods that could be used at unsafe volumes. MTD at 15. Again, the plaintiff "admit[tted] that Apple provided a warning against listening to music at loud volumes." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009).

In sum, Plaintiff lost money purchasing the Products and would not have purchased the Products had she known they contained lead and other heavy metals which is in contrast to the high quality, nutritious, and "free of" advertising. Plaintiff has standing.

## IV.    REASONABLE CONSUMERS ARE DECEIVED

### A. Rule 12(b)(6) Pleading Standard

A claim is facially plausible when she pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

### B. The Reasonable Consumer Standard

The CLRA and UCL "prohibit 'not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). This is "judged by the effect it would have on a reasonable consumer," who is the "ordinary consumer within the target population[.]" *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506-507, 510 (2003). "Because what a reasonable consumer would believe is generally a question of fact, it is a rare situation in which a motion to dismiss will be granted for failure to satisfy this test." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1082 (N.D. Cal. 2022).

### C. Loss of Money Constitutes Injury

Amara states that even if Plaintiff has standing, there is no damage under the UCL and CLRA. MTD at 16. For the reasons stated above (§ III.B), Plaintiff suffered

-14-

an economic loss. *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1108 (9th Cir. 2013).

### D. The Products' Representations Mislead Reasonable Consumers

Plaintiff alleges at least three elements of the Product's packaging are misleading: (1) the labeling statements including "highest quality" ingredients, "Just" organic fruits and vegetables, "nutrition," "nutrient protection technology," and repeated assurances the Product is safe for children to consume; (2) the Product's labels, which do not disclose the presence of harmful heavy metals; and (3) the long list of undesired items that the Product does not contain, including "Non-GMO," "Gluten-Free," "NO ADDED SUGAR," and "Free of additives and preservatives." *See* Compl., ¶¶ 20-21.

Numerous courts have found similar allegations sufficient to allege that reasonable consumers could be misled into believing products did not contain heavy metals. *See, e.g., SunButter,* 2025 WL 84631, at *5-7 ( "bursting with nutrition" and a list of undesired ingredients such as "Non-GMO," "Gluten Free," and "Free from the Top 8 Allergens . . . can imply diligence on the part of the Defendant that would suggest to a reasonable consumer that heavy metals are not present"); *Levy*, 2024 WL 897495, at *6-7 (claims of simplicity and lists of undesired ingredients could mislead reasonable consumers into believing heavy metals are not present); *In re Lindt & Sprungli (USA), Inc., Dark Chocolate Litig.*, 2024 WL 4107244, at *5 (E.D.N.Y. Sept. 6, 2024) (claims regarding the quality of ingredients, including "top quality" sufficient to allege reasonable consumers could be misled into believing product did not contain unsafe amounts of lead, or any lead at all); *Barnes*, 2022 WL 4283779, at *6-7 (rejecting argument that "the representations identified are 'wholly unrelated to heavy metals'" and "are non-actionable and at best puffery" with representations regarding the "quality" of ingredients); *In re Theos Dark Chocolate Litigation*, 2024 WL 4336631, at *10 (N.D. Cal. Sept. 27, 2024) (labeling such as "quality cacao bean" "suggest the absence of contaminants like Heavy Metals in the Products"); *Rodriguez*, 703 F.Supp.3d 1191, 1211-1212 ("Plaintiffs have plausibly

-15-

alleged that a reasonable consumer reading such statements [including only with "the finest" cacao beans] in the context of the full labels could be misled into believing that the Products do not contain unsafe levels of toxic heavy metals.").

Similarly, here, taking the labels as a whole—and mindful that courts should ordinarily refrain from resolving questions of reasonableness on a motion to dismiss (*Williams*, 552 F. 3d at 938), the Court should find Plaintiff has plausibly alleged reasonable consumers could be misled into believing the Products do not contain high levels of lead, cadmium, and arsenic (or, indeed, any heavy metals at all).

**1. The Products' Representations Are Not Puffery**

Amara argues that the labeling statements (1) "parents shouldn't have to choose between nutrition and convenience. You—and your child—deserve both," (2) "Amara Smoothie Melts are blended with the highest quality veggies and fruits", (3) "highest quality," and (4) "You're already the best parent—now you have the snacks to prove it" are non-actionable puffery. MTD at 16-17.

Only "[g]eneralized, vague, and unspecified assertions" that is "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely" constitute puffery. *Rodriguez*, 703 F.Supp.3d at 1211. "Courts have repeatedly emphasized that in order to assess whether a statement is mere puffery, it must be considered in the context of the whole label." *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 965 (N.D. Cal. 2017).

Here, statements that the Products are nutritious for children, made with the "highest quality" ingredients, and that parents are the "best" for providing the Products to their children are not simply puffery because they are specific claims about the Products, and reasonable customers could interpret Amara's statements as safety and quality assurances and, more specifically, an absence of heavy metals. Several courts have found similar representations do not constitute puffery in heavy metal cases. *See, e.g.*, *In re Lindt*, 2024 WL 4107244, at *6 ("Considering the

packaging as a whole, these statements [including '[e]xpertly crafted with the finest ingredients'] are not simply puffery because a reasonable customer could interpret [defendant's] statements as representations about the quality of the chocolate's ingredients, and, more specifically, an absence of lead."); *Rodriguez*, 703 F.Supp.3d at 1212 (collecting cases finding claims concerning "safety and quality assurances" on food products not puffery); *SunButter*, 2025 WL 84631, at *6 ("bursting with flavor & nutrition" not puffery, as it "speaks to the healthiness of the Products and may suggest to a reasonable consumer that Defendant is careful to ensure the quality and safety of the Products, including the absence of contaminants like cadmium."); *In re Theos Dark Chocolate Litigation*, 2024 WL 4336631, at *10 (N.D. Cal. Sept. 27, 2024) ("quality cacao bean" not puffery); *Barnes*, 2022 WL 4283779, at *7 ("our products will live up to the quality you expect," "natural supplement," and "[m]anufactured with LOVE" not puffery); *Reitman v. Champion Petfoods USA, Inc.*, 2019 WL 1670718, at *4 (C.D. Cal. Feb. 6, 2019) (J., Carter) (pet food alleged to contain heavy metals; holding claims of "a natural source of virtually every nutrient your dog needs to thrive" and being "guaranteed to keep your dog healthy, happy and strong" were not puffery and "do convey to consumers that the pet foods are safe, nutritious, and natural").

Amara cites *Tristan v. Bank of Am.*, 2023 WL 4417271 (C.D. Cal. June 28, 2023). MTD at 16. In *Tristan*, this Court noted that in the banking context statements such as "simple," "fast," and "safe" would not cause a reasonable consumer to think "all losses incurred from Zelle fraud would be reimbursed by the Bank as a matter of practice." *Id.* at *5. This Court's decision in *Holt* is more applicable. There, plaintiff alleged dog treats tainted with bacteria were deceptively labeled as "wholesome." *Holt v. Globalinx Pet, LLC*, 2013 WL 3947169, at *11 (C.D. Cal. July 30, 2013) (J., Carter). The Court held that the term "wholesome" is not puffery

because it described the product, and the plaintiff relied on the statement. *Id.* Other cases cited by Amara either support Plaintiff, are not linked to the at issue allegations, or are factually distinct. *See e.g., Brown v. Abbott Lab'ys., Inc.,* 2011 WL 4496154, at *6 n.3 (N.D. Ill. Sept. 27, 2011) ("soothing" created a warranty with allegations related to gastrointestinal discomfort); *Bland v. Abbott Lab'ys, Inc.*, 2012 WL 32577, at *3 (W.D. Ky. Jan. 6, 2012) ( "strong start in life" unrelated to beetle contamination in "some" products); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs. & Prods. Liab. Litig.*, 754 F. Supp. 2d 1208, 1229 (C.D. Cal. 2010) (auto defect); *Golden W. Trading, Inc. v. BelGioioso Cheese, Inc.*, 2010 WL 11515277, at *1 (C.D. Cal. Feb. 19, 2010) (not a consumer action and involved moldy cheese); *Fraker v. KFC Corp.*, 2007 WL 1296571, at *1 (S.D. Cal. Apr. 30, 2007) (fried chicken alleged unhealthy because of trans fats); *Finney v. Ford Motor Co.*, 2018 WL 2552266, at *1, 8 (N.D. Cal. June 4, 2018) ("best in class" and "unsurpassed diesel horsepower" statements in auto defect case puffery when allegations concerned fuel injection and oil pump).

## 2. The "Just" Statement is Not Preempted

Amara argues that the word "Organic" in the UDA Organic Certification seal and "Just" in the ingredient list are preempted. Plaintiff does not challenge the organic certification seal; the Complaint challenges the "organic" representations on the labels separate and apart from the seal.[7] The word "just" in the ingredient list is not preempted. Amara points to no rule or regulation which requires or allows it to include the word "just" in an ingredient list; indeed, "just" is not an ingredient—it is a marketing scheme to persuade consumers there are no contaminates in the Products. For clarity, Plaintiff does not request that lead, cadmium, and arsenic be

---

[7] Amara agrees. *See* MTD at 17-18.

added to the ingredient list.

### 3. Any Literally True Statements Are Misleading Considering the Labeling as a Whole

Amara's argument that some labeling statements are true does not warrant dismissal. "A statement may be deceptive and actionable under the UCL, FAL, and CLRA even though it is truthful." *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1115 (S.D. Cal. 2011). Thus, even if some labeling statements are true in isolation, "a 'reasonable consumer could interpret them to imply that Defendant's products are healthy, when they allegedly are not.'" *Boswell v. Costco Wholesale Corp.*, 2016 WL 3360701, at *9 (C.D. Cal. Jun. 6, 2106) (J., Carter) (quoting *Henderson v. J.M. Smucker Co.*, 2011 WL 1050637, at *4 (C.D. Cal. Mar. 17, 2011)). As detailed above, the Products' express representations when considered as a whole are misleading to reasonable consumers.

Amara relies on *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074 (N.D. Cal. 2017). There, the "only challenged statement" was "MADE WITH Real Fruit" which was alleged to be false because the products contain trans fats. *Id.* at 1092. The court held that the claim was true and not connected to trans fat. Here, even when looking at the statements in isolation, the statements about nutrition, the "highest quality veggies and fruits," and that the Products "just" contain fruits and vegetables are objectively false because the Products contain lead, an undisclosed substance that is not nutritious for children or considered to be the highest quality toddler food.

### E. Plaintiff Sufficiently Alleges Misrepresentation by Omission

To plausibly allege a fraudulent omission, the omission must either (1) "be contrary to a representation actually made by the defendant," or (2) "an omission of a fact the defendant was obliged to disclose." *Hodsdon v. Mars*, *Inc.*, 891 F.3d 857,

865 (9th Cir. 2018). There is a duty to disclose when "(1) the defect at issue relates to an unreasonable safety hazard or (2) the defect is material, 'central to the product's function,' and the plaintiff alleges one of the four *LiMandri* factors." *Hammerling*, 615 F. Supp. 3d at 1085. The *LiMandri* factors are "(1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes partial representations but also suppresses some material facts." *Id.*

### 1. Plaintiff Adequately Alleges a Partial Omission Theory

Under the first prong of *Hodsdon,* a partial omission claim stands when the omission is "contrary to a representation actually made by the defendant." 891 F.3d at 865. Partial omission claims are intended to prevent defendants from making "misleading statements that, in a vacuum, were true while leaving out contradictory information." *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1013 (N.D. Cal. 2020). Thus, the reasonable consumer test applies to both affirmative misrepresentations and omissions. *See Rodriguez*, 703 F. Supp. 3d at 1206; *Sunbutter*, 2025 WL 84631, at *7.

Amara argues it made no representation about heavy metals, so it does not have a duty to disclose. Plaintiff refuted this argument in Section IV.D. above which detailed why the Products' labeling create the net-impression that they do not contain heavy metals. Amara did not disclose the heavy metals, so the omission is contrary to the representations made on the label making the failure to disclose actionable under *Hodsdon*. *See, e.g.*, *In re Lindt*, 2024 WL 4107244, at *10 ("excellence," "expertly crafted," and "finest ingredients" could cause reasonable consumers to believe products did not contain cadmium); *Rodriguez*, 2023 WL 8115773, at *11 ("SIMPLE DARK CHOCOLATE" and "GET BACK TO HUMAN" could mislead

consumers into believing chocolate did not have heavy metals); *SunButter, LLC, ,* 2025 WL 84631, at *5, 7 (partial omission theory viable in cadmium-tainted Sun Butter labeled as "Simple Ingredients," and "bursting with flavor & nutrition"); *see also Doe*, 70 F. Supp. 3d at 1079 (a plaintiff need only "allege that Defendant made partial representations that were misleading due to other facts not disclosed, and identify specific representations and omissions").

### 2. The Lead in the Products is an Unreasonable Safety Hazard

Amara claims there is no "unreasonable safety risk," the presence of heavy metals is not material to consumers and is not central to the Products' function. MTD at 20. Amara claims even if the heavy metals pose "some risk" the risk is reasonable. *Id*.

This Court held that the "potential of a safety risk is enough to sufficiently plead a material omission for purposes of the UCL and CLRA." *Precht v. Kia Motors Am., Inc.*, 2015 WL 12684342, at *8 (C.D. Cal. Apr. 8, 2015) (J., Carter). Amara cites *Grausz v. Hershey Co.*, 713 F. Supp. 3d 818 (S.D. Cal. 2024) claiming it is reasonable to have lead in the Products. *Grausz* was issued before the FDA's 2025 Action Levels for lead and involved foods intended for adults. Considering there is no safe level of lead for children to consume, the lack of any real nutritional value in the Products, that there are other foods for children on the market without lead, and the levels of lead in the Products are above the FDA's 2025 Action Levels, it is not reasonable for the Products to contain undisclosed lead.

### 3. Plaintiff States a Claim for Active Concealment

Plaintiff alleges, and it is difficult to refute, that the presence of heavy metals in children's food is material to consumers' purchase decisions. *See* Complt., ¶¶ 45, 47, 75. Plaintiff also alleges Amara actively concealed and had exclusive knowledge

of this fact. ¶¶ 45-46, 51, 75, 106. Amara's Motion does not address this. Accordingly, the Court should find Plaintiff plausibly alleges an omission theory.

### F. Plaintiff States UCL Claims

Amara admits if its advertising has the tendency to mislead reasonable consumers, then Plaintiff states a claim under the UCL. For the reasons detailed above, Plaintiff states a claim under the UCL.

### G. Plaintiff Sufficiently Alleged Breach of Implied Warranties

The implied warranty of merchantability "provides for a minimum level of quality" in a good. *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1296 n. 2 (1995). "In cases involving human food, a party can plead that a product violates the implied warranty of merchantability through allegations that the product was unsafe for consumption, contaminated, or contained foreign objects." ¶ 98 (quoting *Barnes*, 2022 WL 4283779, at *8. Plaintiff alleges lead compromises the safety and fitness for consuming of the Products. ¶ 99 (citing *Barnes*, 2022 WL 4283779, at *8; *Rodriguez,* 703 F.Supp.3d at 1212-13); *Castillo v. Prime Hydration LLC*, 2024 WL 4133815, at *9 (N.D. Cal. Sept. 9, 2024) (PFAS in a sports drink plausibly breach of implied warranty).

### H. Punitive Damages

Allegations of "willful and conscious disregard of the rights or safety of others" (Complt., ¶¶ 76, 106) must be taken as true. *Rhodes v. Biomet, Inc.,* 2020 WL 1941078, at *4 (C.D. Cal. Feb. 3, 2020) (Carter, J.). Plaintiff's claim for punitive damages should not be dismissed. *See id.*

# V.    CONCLUSION

Amara's motion to dismiss should be denied. If the Court dismisses any portion of the action, Plaintiff requests leave to amend.[8]

Dated: January 17, 2025

CROSNER LEGAL, P.C.

By:    */s/ Craig W. Straub*
CRAIG W. STRAUB

Craig W. Straub (SBN 249032)
craig@crosnerlegal.com
Zachary M. Crosner (SBN 272295)
zach@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637

Attorneys for Plaintiff

## Certificate of Compliance with Local Ruel 11-6.1

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,999 words, which complies with the word limit of L.R. 11-6.1. The brief is also under 25 pages which complies with the Court's rules as stated on the Court's webpage: https://www.cacd.uscourts.gov/honorable-david-o-carter.

Dated: January 17, 2025

By:    */s/ Craig W. Straub*
CRAIG W. STRAUB

---

[8] *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

-23-