JACOB M. HARPER (State Bar No. 259463)
  jacobharper@dwt.com
ASHLEY L. VULIN (*pro hac vice pending*)
  ashleyvulin@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California  90071
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

Attorneys for Defendant
PATAFOODS, INC., D/B/A
AMARA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JESSICA VU, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PATAFOODS, INC. d/b/a Amara Organic Foods, Inc.,<br><br>Defendant. | Case No. **8:24-cv-02265**<br><br>**DEFENDANT PATAFOODS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**<br><br>[*Filed concurrently with Reply In Support of Request for Judicial Notice*]<br><br>Assigned to the Hon. David O. Carter<br>Courtroom:  10A<br><br>Date:        February 10, 2025<br>Time:        8:30 a.m.<br><br>Action Filed: October 18, 2024 |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I. INTRODUCTION ..................................................................................1

II. THE COURT SHOULD DISMISS UNDER RULE 12(B)(6)........................2

 A. All Plaintiff's Claims Fail Because the Snacks' Labels Would Not Mislead a Reasonable Consumer. ...................................................2

  1. Plaintiff Alleges No False or Misleading Representations..........2

  2. Plaintiff Alleges No Fraudulent Omissions. ...............................6

 B. Plaintiff's Complaint Does Not Entitle Her to Punitive Damages.........8

III. THE COURT SHOULD DISMISS UNDER RULE 12(B)(1)........................8

 A. Plaintiff Lacks Standing Because She Fails to Allege the Snacks She *Actually Purchased* Contained Heavy Metals.................................8

 B. Plaintiff Lacks Standing Even If She Alleged the Snacks Contained Heavy Metals. .........................................................12

 C. The Court Should Refer the Case to FDA Under the Primary Jurisdiction Doctrine. ...........................................................17

IV. CONCLUSION................................................................................20

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

REPLY ISO MOTION TO DISMISS COMPLAINT

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015) ............................................................. 18

*Avila v. Bank of Am.*,
    2017 WL 4168534 (N.D. Cal. Sept. 20, 2017) ......................................3

*Balistreri v. McCormick & Co.*,
    2023 WL 5988600 (N.D. Cal. Sept. 13, 2023) ..................................... 11, 15, 16

*Barnes v. Nat. Organics, Inc.*,
    2022 WL 4283779 (C.D. Cal. Sept. 13, 2022) ..................................... 6, 15, 16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................... 3, 7

*Birdsong v. Apple, Inc.*,
    590 F.3d 955 (9th Cir. 2009) ............................................................. 17

*Boswell v. Costco Wholesale Corp.*,
    2016 WL 3360701 (C.D. Cal. Jun. 6, 2106) ........................................5

*Bowen v. Energizer Holdings, Inc (Bowen I)*,
    2022 WL 18142508 (C.D. Cal. Aug. 29, 2022) ................................... 10

*Bowen v. Energizer Holdings, Inc. (Bowen III)*,
    118 F.4th 1134 (9th Cir. 2024) ......................................................... 10, 16

*Boyd v. SunButter, LLC*,
    2025 WL 84631 (C.D. Cal. Jan. 10, 2025) ......................................... 5, 6, 11, 15

*Boysen v. Walgreen Co.*,
    2012 WL 2953069 (N.D. Cal. July 19, 2012) .................................... 14, 15, 16, 17

*Brown v. Nature's Path Foods, Inc.*,
    2023 WL 2699978 (N.D. Cal. Mar. 29, 2023) .....................................9

*Castillo v. Prime Hydration LLC*,
    2024 WL 4133815 (N.D. Cal. Sept. 9, 2024) ..................................... 11, 15

**DAVIS WRIGHT TREMAINE** LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Cuevas v. Topco Associates, LLC*,
  2017 WL 11634779 (C.D. Cal. July 18, 2017)........................................... 18, 19

*Gagetta v. Walmart, Inc.*,
  646 F. Supp. 3d 1164 (N.D. Cal. 2022) ......................................... 11, 15, 16, 17

*Grausz v. Hershey Company*,
  691 F. Supp. 3d 1178 (S.D. Cal. 2023).................................................... 7, 12, 15

*Herrington v. Johnson & Johnson Consumer Cos., Inc.*,
  2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ......................................................7

*Hodsdon v. Marc, Inc.*,
  891 F.3d 857 (9th Cir. 2018) ..............................................................................7

*Holt v. Globalinx Pet, LLC*,
  2013 WL 3947169 (C.D. Cal. July 30, 2013)......................................................4

*In re Fruit Juice Prod. Mktg. & Sales Pracs. Litig.*,
  831 F. Supp. 2d 507 (D. Mass. 2011) .......................................................... 14, 15

*In re Lindt & Sprüngli (USA), Inc., Dark Chocolate Litig.*,
  2024 WL 4107244 (E.D.N.Y. Sept. 6, 2024) ......................................................6

*In re Plum Baby Food Litig.*,
  2022 WL 16640802 (N.D. Cal. Jan. 12, 2022).................................................. 16

*In re Theos Dark Chocolate Litig.*,
  2024 WL 4336631 (N.D. Cal. Sept. 27, 2024) ................................... 5, 6, 15, 16

*In re Trader Joe's Co. Dark Chocolate Litig.*,
  726 F. Supp. 3d 1150 (S.D. Cal. 2024)........................................................ 15, 16

*Kelley v. WWF Operating Co.*,
  2017 WL 2445836 (E.D. Cal. June 6, 2017) ............................................... 18, 19

*Levy v. Hu Products LLC*,
  2024 WL 897495 (S.D.N.Y. Mar. 1, 2024)..................................... 6, 11, 12, 15

*McFarland v. Guardsmark, LLC*,
  538 F. Supp. 2d 1209 (N.D. Cal. 2008) ..............................................................3

*McGee v. S-L Snacks Nat'l*,
  982 F.3d 700 (9th Cir. 2020) ...................................................................... 13, 17

**DAVIS WRIGHT TREMAINE** LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Pels v. Keurig Dr. Pepper, Inc.*,
  2019 WL 5813422 (N.D. Cal. Nov. 7, 2019) .................................................. 10

*Precht v. Kia Motors Am., Inc.*,
  2015 WL 12684342 (C.D. Cal. Apr. 8, 2015) ...................................................7

*Reitman v. Champion Petfoods USA, Inc.*,
  2019 WL 1670718 (C.D. Cal. Feb. 6, 2019) .......................................................4

*Rhodes v. Biomet, Inc.*,
  2020 WL 1941078 (C.D. Cal. Feb. 3, 2020) .......................................................8

*Rice-Sherman v. Big Heart Pet Brands, Inc.*,
  2020 WL 1245130 (N.D. Cal. Mar. 16, 2020)................................................ 11

*Rodriguez v. Mondelēz Glob. LLC*,
  703 F. Supp. 3d 1191 (S.D. Cal. 2023)....................................................... *passim*

*Stephenson v. Neutrogena Corp.*,
  2012 WL 8527784 (N.D. Cal. July 27, 2012)................................................. 12

*Syntek Semiconductor Co. v. Microchip Tech. Inc.*,
  307 F.3d 775 (9th Cir. 2002) ....................................................................... 19

*Tristan v. Bank of Am.*,
  2023 WL 4417271 (C.D. Cal. June 28, 2023) ....................................................4

*Vavak v. Abbott Lab'ys, Inc.*,
  2011 WL 13130493 (C.D. Cal. Mar. 7, 2011)............................................... 10

*Wallace v. ConAgra Foods, Inc.*,
  747 F.3d 1025 (8th Cir. 2014) ............................................................... 10, 11

*Zeiger v. WellPet LLC*,
  304 F. Supp. 3d 837 (N.D. Cal. 2018) ...................................................... 15, 16

**Rules**

Federal Rule of Civil Procedure
  12(b)(1) ...........................................................................................................8
  12(b)(6) ...........................................................................................................2

**Other Authorities**

S.4303 - Baby Food Safety Act of 2024 ................................................ 3, 13, 14

**DAVIS WRIGHT TREMAINE** LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

REPLY ISO MOTION TO DISMISS COMPLAINT

## I.    INTRODUCTION

Amara's Motion identified several straight-forward reasons to dismiss Plaintiff's claims and Plaintiff's Opposition fails to overcome any.  Recall, Plaintiff purports to bring a *mislabeling* case (not a personal injury or product defect case), and efforts to disguise the same behind citations to various studies and claims about the physical dangers of heavy metals fail.  Instead, Plaintiff must show that the *actual statements* on the products *she purchased* misrepresent *heavy metal content*—which she cannot do.

***First***, as a matter of law, the factually true, specific promises that the Snacks are "non-GMO," have "no sugar added," and are "free of additives and preservatives" would never mislead a reasonable consumer into thinking they make an equally specific, but different, promise to be free of trace heavy metals.

***Second***, Plaintiff relies on case after case where the plaintiffs provided testing for (and purchased) *each product* over which they sued.  But here, Plaintiff instead asks the Court to purely speculate as to the heavy metal content of the Snacks she actually purchased.  This speculation rests *on a single spot test* of only *one of the purchased flavors* (and a spot test of another, *unpurchased* flavor), conducted as many as *three-and-a-half years* after Plaintiff's purchase, to extrapolate mislabeling claims to *five Snack flavors* with *unique combinations of ingredients*.

***Third***, Plaintiff based her claims on the fact that the Snacks contained heavy metals above an established safety threshold (either FDA Guidance or a failed proposed bill).  But Plaintiff now presents a new, untenable theory that any amount of heavy metals (heavy metals that Plaintiff admits are ubiquitous in the environment) make the Snacks worthless despite identifying *no applicable safety threshold* above which the alleged heavy metal levels fall.  The Court should dismiss.

REPLY ISO MOTION TO DISMISS COMPLAINT

**DAVIS WRIGHT TREMAINE** LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

## II.    THE COURT SHOULD DISMISS UNDER RULE 12(B)(6)

Even if Plaintiff had standing, which she does not, *see* § III, below, her claims fail on the merits.

### A.    All Plaintiff's Claims Fail Because the Snacks' Labels Would Not Mislead a Reasonable Consumer.

Plaintiff's claims all fail because she alleges no deceptive or misleading conduct.  Her deception theory is a moving target that even she cannot hit.  The FDA makes clear in its Guidance, upon which Plaintiff relies, that heavy metals exist throughout the environment and have made it into our food system. *E.g.* Straub Decl., Ex. A at 4–5 ("Because lead may be present in environments where food crops used to make processed food intended for babies and young children are grown, various foods may contain small amounts of lead.").  Thus, Plaintiff must allege why statements on the Snacks' label would mislead a reasonable consumer to presume the Amara excluded or extracted from its Snacks specific elements that exist throughout the produce aisle.  But ***the labels say nothing about heavy metals*** nor do they have any statement that can be stretched to include heavy metals.

Further, Plaintiff cannot decide if the Snacks' labels misled her into believing the Snacks contained *no* trace heavy metals or if she thought they had no "significant levels of heavy metals."  Compl. ¶¶ 6, 19–20; *see also, e.g.*, Opp'n 1–2, 6. Even then, she cannot establish an applicable standard for a "significant" level. Regardless, neither theory sticks.

#### 1.    Plaintiff Alleges No False or Misleading Representations.

Amara showed the Snacks' labels cannot create any impression as to heavy-metal levels because the challenged statements are non-actionable puffery, preempted by federal law, or factually true.  Mot. 16–19.  Plaintiff attempts to save her claims by drowning the Court in caselaw addressing labels for other products that did not plausibly have naturally occurring metals and conclusorily asserting she has alleged facts sufficient to show "reasonable consumers could be misled into

**DAVIS WRIGHT TREMAINE** LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

believing the Products do not contain high levels of lead, cadmium, and arsenic (or, indeed, any heavy metals at all)." Opp'n 15. Plaintiff's attempts miss the mark on both her "high" and "no" metal theories.

Plaintiff does not dispute that lead, cadmium, and arsenic naturally occur in fruits and vegetables; indeed, she concedes she is concerned *only* with metals "which have been *intentionally or negligently added* to the products."[1] Compl. ¶ 46 (emphasis added); Opp'n 6 (arguing Amara "negligently *allowed* the heavy metal contamination" (emphasis added)).[2] Yet she provides no allegations or cogent theory showing a reasonable person would interpret the labels to conclude Amara *removed* naturally occurring metals from its ingredients such that a reasonable person would expect *no* trace metals in the Snacks. Nor does she provide any allegations or cogent theory showing any metals were present in a "high" or "unsafe" amount as to establish deception *even if* the labels gave reasonable consumers any impression as to the level of metals. Plaintiff's proffered standard for the "safe" level of metals, the Baby Food Safety Act, never became law and is not FDA's recommendation (as she misleadingly asserts in her Complaint). Compl. ¶ 9; Opp'n 5. Unpassed bills are not persuasive. *McFarland v. Guardsmark, LLC*, 538 F. Supp. 2d 1209, 1217 (N.D. Cal. 2008) ("Unpassed bills cannot provide evidence of legislative intent."), *aff'd*, 588 F.3d 1236 (9th Cir. 2009).

Her arguments as to puffery, preemption, and truth also fail.

---

[1] Plaintiff argues the labels are deceptive despite lead being "unavoidable" because "[t]here are numerous other toddler food products on the market without heavy metals." Opp'n 2. But her Complaint identified no alternative products. *See* Compl. ¶ 50 (conclusory allegation unsupported by facts); *Avila v. Bank of Am.*, 2017 WL 4168534, at *4 (N.D. Cal. Sept. 20, 2017) ("Plaintiff cannot rewrite its complaint now in its opposition to the motion to dismiss."). In any event, the evidence she cites shows that metals *are* unavoidable: according to Plaintiff, 814 of the 984 products tested (83%) contain lead. ECF No. 23-1, Exs. B, C.

[2] It is just as conceivable that the Snacks' metal content was naturally occurring and not a contaminant as Plaintiff suggests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 567–68 (2007) ("an obvious alternative explanation" for conduct precludes a plausible suggestion of liability).

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

REPLY ISO MOTION TO DISMISS COMPLAINT

**Puffery.**  Plaintiff strains reason to assert that the "nutritious," "highest quality," and "best parent" statements are not puffery.  Mot. 17; Opp'n 16–17. These statements all appear on the back label, Compl. ¶ 21, and, even when read "as a whole" as Plaintiff advocates, Opp'n 16, reveal *no* specific claims as to the safety of the Snacks.  In context, they are only "general descriptive statements" made to puff up the Snacks.  *Tristan v. Bank of Am.*, 2023 WL 4417271, at *4 (C.D. Cal. June 28, 2023) (Carter, J.) (non-verifiable statements of fact are puffery), *appeal filed*, No. 24-6704 (9th Cir. Nov. 4, 2024).

Plaintiff's caselaw is inapposite as each case considered statements that, in context, communicated a more general promise regarding safety that was considered broad enough to address trace heavy metals.  Defendant makes no such safety statements.  For example, in *Reitman v. Champion Petfoods USA, Inc.*, the labels broadly promised that the food was "guaranteed to keep your dog *healthy*," "*appropriate*" for dogs, and "*exclud[ed] … anything … that nature didn't *intend for your dog to eat*," which could reasonably convey the health and safety of the product—and thus the lack of contaminants.  2019 WL 1670718, at *3–4 (C.D. Cal. Feb. 6, 2019) (Carter, J.).  And Plaintiffs wholly misrepresent *Holt v. Globalinx Pet, LLC*—there, the Court recognized that "in Texas, 'wholesome' does have a significant legal meaning."  2013 WL 3947169, at *11 (C.D. Cal. July 30, 2013) (Carter, J.).

**Preempted.**  Plaintiff's argument against preemption fares no better in regards to her statements about "organic" and "just."  She does not dispute that federal law preempts challenges to the "organic" statement in the USDA Organic certification seal, Opp'n 18, and she provides no authority for her nuanced position that she may nonetheless challenge other "organic" statements even though the Snacks are organic.  The Snacks are certified organic, and federal law preempts challenges to that designation, however represented.  Mot. 17–18.

4

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Plaintiff argues federal law does not preempt her claims challenging the "just" statement in the Snacks' ingredient list because federal law does not expressly permit the "just" statement, Opp'n 18, but this misses the point. The Snacks *do* contain "just" the ingredients listed on their ingredient lists, Mot. 18, and Plaintiff concedes heavy metals are not "ingredients." Opp'n 18–19. Federal law therefore preempts her challenge to the ingredient lists, including the factually accurate "just" statement they contain.[3] Mot. 18.

**Factually True and Incapable of Deception.** Plaintiff does not dispute that the statements concerning the lack of GMOs, added sugar, or additives and preservatives are true. She nonetheless asserts reasonable consumers could interpret these statements "to imply that Defendant's products are healthy, when they allegedly are not." Opp'n 19 (quoting *Boswell v. Costco Wholesale Corp.*, 2016 WL 3360701, at *9 (C.D. Cal. Jun. 6, 2106) (Carter, J.)). This theory fails, because Plaintiff has proffered no allegations—only speculation—that the Snacks have "unhealthy" levels of metals. Further, none of these statements are in any way connected to heavy metals/contaminants unlike the labels at issue in *Boswell*, which literally touted the product as "healthful and delicious." 2016 WL 3360701, at *9.

**Plaintiff's Cases are Distinguishable.** Plaintiff attempts to save her complaint from dismissal seemingly by citing as many cases as possible. But none of her cases addressed the Snacks and in attempting to analogize to "similar allegations" she largely misrepresents the challenged statements. In *Boyd v. SunButter, LLC*, for example, the court considered the packaging as a whole— which also boasted its safety as it is "Free from the Top 8 Allergens"—to determine "bursting with … nutrition" referred to the safety of the product and was not puffery. 2025 WL 84631, at *5–6 (C.D. Cal. Jan. 10, 2025), *adopted*, 2025 WL

---

[3] And one of her own cases expressed "serious skepticism" that a "pure" statement "spurs reasonable consumers to come to conclusions about the Heavy Metal content (as opposed to the flavor composition)." *In re Theos*, 2024 WL 4336631, at *10.

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

84700 (C.D. Cal. Jan. 13, 2025). The court also considered the parties' "wealth of cases" and recognized the "labels in this case are less obviously misleading to a reasonable consumer than those in the other heavy metal cases." *Id.* at *7. If *Boyd* was "less obviously misleading," the labels here cannot be misleading at all.

Plaintiff's other cases must also be read in context; each involved a label that, as a whole, plausibly suggested the absence of contaminants. *See id.* at *6 (addressing the same cases Plaintiff relies on in opposition); *Rodriguez v. Mondelēz Glob. LLC*, 703 F. Supp. 3d 1191, 1200 (S.D. Cal. 2023) ("in context," the "made with fine Trinitario cacao beans," "SIMPLE DARK CHOCOLATE" and "Get Back to Human" statements were suggestive of lack of contaminants); *Barnes v. Nat. Organics, Inc.*, 2022 WL 4283779, at *7 (C.D. Cal. Sept. 13, 2022) (vitamins claimed to be "safe"); *Levy v. Hu Products LLC*, 2024 WL 897495, at *6–7 (S.D.N.Y. Mar. 1, 2024) (same, relying on *Rodriguez*); *In re Lindt & Sprüngli (USA), Inc., Dark Chocolate Litig.*, 2024 WL 4107244, at *2 (E.D.N.Y. Sept. 6, 2024) ("finest ingredients" in context of statements like "[o]ur standards uphold the integrity of our raw and packaging materials and ingredients" suggestive of lack of contaminants); *In re Theos Dark Chocolate Litig.*, 2024 WL 4336631, at *10 (N.D. Cal. Sept. 27, 2024) ("*pay[s] higher prices* for quality cacao beans" suggestive of lack of contaminants).

### 2. Plaintiff Alleges No Fraudulent Omissions.

Plaintiff's fraudulent omission theory fails because (1) she identifies no "contrary" representation and (2) Amara had no duty to disclose. Mot. 20.

*First*, Plaintiff concedes her partial omission theory depends on the same representations on which she bases her faulty affirmative misrepresentation theory, rebutted above. Opp'n 20. It thus fails for the same reasons.

*Second*, Plaintiff argues Amara had a duty to disclose the alleged trace levels of naturally occurring heavy metals in the Snacks because there is no safe level for of heavy metals, Opp'n 21, but she does not meaningfully distinguish Amara's

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

authority to the contrary.  Mot. 20.  First, Plaintiff fails to allege any facts that the omission was either (1) "contrary to a representation actually made by the defendant," or (2) something "the defendant was obliged to disclose."  *Hodsdon v. Marc, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018).  On the issue of whether or not the Snacks created an unreasonable risk, her pleading suffers the same flaw as the one in *Herrington v. Johnson & Johnson Consumer Cos., Inc.*, 2010 WL 3448531, at *4 (N.D. Cal. Sept. 1, 2010) (no allegation of an unreasonable safety hazard), and her distinction of *Grausz v. Hershey Company*, 691 F. Supp. 3d 1178 (S.D. Cal. 2023), on the basis that FDA declared the present compounds were not a safety hazard falls flat because, likewise, the 2025 Guidance does not apply to snacks like the Snacks.  Even Plaintiff's cases would find no actionable omission.  *See Rodriguez*, 703 F. Supp. 3d at 1209 (dismissing fraud-by-omission claims where plaintiffs did not plausibly allege defendant "concealed an *unreasonable* safety hazard").[4]

Critically, Plaintiff's theory would require *every produce farmer and retailer in the country* to conduct testing and include "heavy metal" warning stickers on their produce if they detect trace levels.  Particularly in the absence of even the slightest indication from FDA that potential risks warrant this type of requirement, no Plaintiff should be allowed to jeopardize the US food system on the basis of a consumer mislabeling claim.  This is precisely the type of over-reaction FDA cautions against when it warns parents not to "throw out their supply of packaged baby foods" because "[e]liminating food groups … to avoid certain toxic elements that occur in the food supply may result in deficiencies in certain nutrients and potential poor health outcomes."[5]  Harper Decl., Ex. 5 at 2.

---

[4] Unlike Plaintiff's, the complaint in *Precht v. Kia Motors Am., Inc.* disclosed specific "material safety risks" the non-disclosed gear-shift issue could potentially cause.  2015 WL 12684342, at *8 (C.D. Cal. Apr. 8, 2015) (Carter, J.).

[5] Plaintiff relies on only repeated, conclusory allegations to support her "active concealment" theory.  Opp'n 21–22 (citing Compl. ¶¶ 45–46, 51, 75, 106 (all conclusory)).  Conclusory allegations fail to state a claim.  *Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions").  Regardless, she provides no caselaw

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

**B.     Plaintiff's Complaint Does Not Entitle Her to Punitive Damages.**

Plaintiff does not address Amara's point that she alleges none of the elements for punitive damages against a company. *See* Mot. 21–22. She instead asks the Court to accept her conclusory allegations, then mischaracterizes her only authority, *Rhodes v. Biomet, Inc.*, 2020 WL 1941078 (C.D. Cal. Feb. 3, 2020) (Carter, J.). This Court in *Rhodes* did not say "[a]llegations of 'willful and conscious disregard of the rights or safety of others' must be taken as true." Opp'n 22. It simply ruled the many and detailed allegations that the defendant actively concealed a known product defect alleged a basis for punitive damages. *Rhodes*, 2020 WL 1941078, at *4. Plaintiff's Complaint includes no comparable allegations.[6]

### III.     THE COURT SHOULD DISMISS UNDER RULE 12(B)(1)

Plaintiff also lacks standing to bring these claims in this Court because (1) she does not allege a particularized injury to her based on the Snacks she purchased, and (2) she does not allege a concrete injury based on Snacks that do not exceed any applicable safety standard.

**A.     Plaintiff Lacks Standing Because She Fails to Allege the Snacks She *Actually Purchased* Contained Heavy Metals.**

Plaintiff lacks standing first because she does not plausibly allege the Snacks *she purchased* contained heavy metals. Mot. 10–12. Plaintiff argues she does not have to test the Snacks she purchased, Opp'n 7, but she misses the point. What Plaintiff has to do is allege sufficient facts to entitle her to an inference that *her*

---

on this theory, which still requires showing materiality or an unreasonable safety hazard, *see Rodriguez*, 703 F. Supp. 3d at 1210, which she does not do. Mot. 20.

[6] Plaintiff's UCL claim fails for the reasons addressed above. Mot. 21. And Plaintiff does not state an implied warranty claim because she does not allege the Snacks are unfit for their ordinary purpose. *Id.* She argues the Snacks are "unsafe for consumption, contaminated, or contain[] foreign objects," Opp'n 22 (quotation omitted), but she fails to allege facts that would establish any of these things. She does not allege the Snacks are unsafe (as she identifies no benchmark of "unsafe"), and she does not allege the Snacks are contaminated or contain foreign objects. Her cases are unpersuasive here for the same reasons they are distinguished elsewhere in this Reply.

**DAVIS WRIGHT TREMAINE** LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

REPLY ISO MOTION TO DISMISS COMPLAINT

*Snacks* contained heavy metals—but all she offers are breadcrumbs from which the Court must speculate as to the presence of heavy metals in Plaintiff's Snacks. Plaintiff is not entitled to *the inference* that the Snacks she purchased contained heavy metals because (1) the Snacks contain different ingredients from the Snacks that were tested (save one); (2) given the indisputable factual reality regarding seasonality of farming and the shelf life of produce, the ingredients in the same flavor Snack would change over the three-and-a-half years in which she purchased the Snacks (as even Lead Safe and FDA affirm); and (3) Plaintiff never bought one of the two tested flavors.  S*ee* Mot. 4, 11–12.  ***In opposition, Plaintiff does not dispute these facts***.

Plaintiff's ***only factual allegation*** regarding similarity fails to meet pleading standards: Plaintiff says, at a general level, the Snacks contain "the same ingredients (fruits, vegetables and coconut milk)."  Opp'n 9.  Adopting Plaintiff's level of generality would mean that any foods made with produce would be "the same" for purposes of alleging standing.  Plaintiff's only authority for this unintuitive argument, *Brown v. Nature's Path Foods, Inc.*, addressed whether a plaintiff has standing to sue for products she did not purchase, not whether a plaintiff could sue over untested and materially different products.  2023 WL 2699978, at \*4 (N.D. Cal. Mar. 29, 2023).[7]  As noted even by *Brown*, Plaintiff would struggle to overcome the standard for an inference facing even one of these facts (different ingredients, products not tested, and products not purchased); she cannot recover when she must contend with all three.

Put another way, Plaintiffs best argument, and one which she can proffer for only one of the five Snacks, is as follows: because a single one pack of the Carrot Raspberry Snacks contained trace levels of heavy metals when tested in 2024, the Court should infer that the Carrot Raspberry Snack Plaintiff purchased potentially

---

[7] Even the Lead Safe webpage from which Plaintiff got the test results explains this level of generalization is incorrect.  *See* Mot. 7.

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

three-and-a-half years prior (and with ingredients from that time period) also contained heavy metals. Plaintiff cannot assert a claim on this speculative theory, let alone on the even more speculative theories offered for the other flavors.

Plaintiff does not meaningfully address Amara's authority explaining why her alleged spot testing of two products—with materially different ingredients and only one of which she purchased—does not entitled her to sue over untested products. She does not engage with *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025 (8th Cir. 2014), *see* Opp'n 8, which offers a straight-forward explanation for why her claims fail to allege standing. She attempts to distinguish *Pels v. Keurig Dr. Pepper, Inc.*, 2019 WL 5813422 (N.D. Cal. Nov. 7, 2019), and *Vavak v. Abbott Lab'ys, Inc.*, 2011 WL 13130493 (C.D. Cal. Mar. 7, 2011), on the basis that those plaintiffs alleged, at most, that certain batches of a product contained an unintended defect, *see* Opp'n 8, but that is exactly what Plaintiff alleges here. And the Ninth Circuit overruled a *later* order in *Bowen* dismissing an *amended complaint* on *different grounds*. To the extent the Ninth Circuit's order sheds any light on the relevant reasoning in *Bowen v. Energizer Holdings, Inc (Bowen I)*, 2022 WL 18142508 (C.D. Cal. Aug. 29, 2022) (or Plaintiff's Complaint), it affirms Plaintiff must allege facts supporting a reasonable inference that the un-tested products would suffer from the same defect as the tested products. *See Bowen v. Energizer Holdings, Inc. (Bowen III)*, 118 F.4th 1134, 1149 n.13 (9th Cir. 2024) (allegation that products were recalled because of benzene in an ingredient universal to tested and untested products—the propellant—sufficed to allege un-tested products contained benzene). Unlike a line of sunscreens all with the same contaminated propellant, Plaintiff's claims rely upon mixed perishable food Snacks with different produce ingredients that, by their nature, have to come from different harvests over time. This Court cannot make the same inferences regarding the consistent presence of an unwanted material in a perishable produce-containing product that the Ninth Circuit endorsed for sunscreen in *Bowen III*.

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Instead, the authority Plaintiff cites all but uniformly require much more than Plaintiff alleges. Most involved a plaintiff who *both purchased and provided test results for the specific products at issue*—they do not support the theory that Plaintiff can challenge five materially different products based on spot testing of only two (one unpurchased). *See Rodriguez*, 703 F. Supp. 3d at 1205 (plaintiffs purchased and provided "repeated[]" testing of each product at issue); *Balistreri v. McCormick & Co.*, 2023 WL 5988600, at *1 (N.D. Cal. Sept. 13, 2023) (plaintiffs purchased and provided testing for each product at issue); *Gagetta v. Walmart, Inc.*, 646 F. Supp. 3d 1164, 1169 (N.D. Cal. 2022) (same); *Boyd*, 2025 WL 84631, at *1–2 (same); *Castillo v. Prime Hydration LLC*, 2024 WL 4133815, at *1 (N.D. Cal. Sept. 9, 2024) (plaintiff purchased and provided testing for single product at issue); *Rice-Sherman v. Big Heart Pet Brands, Inc.*, 2020 WL 1245130, at *6–7 (N.D. Cal. Mar. 16, 2020) (same; distinguishing *Wallace* on this basis).

Plaintiff cites one New York District Court case, *Levy*, which permitted a plaintiff to sue over some flavors of chocolate for which she provided no test results. 2024 WL 897495, at *1. But *Levy* is a poor guide here because there was no reason to believe the untested flavors—which were all from the same 70% cacao line—would contain different amounts of heavy metals than did the tested flavors. *Levy* is further distinguishable because the testing was more rigorous: Consumer Reports, which reported on heavy metals in the defendant's chocolates, "tested '2–3 samples with at least two distinct lot codes of each model,'" *id.* at *3, whereas Lead Safe admits it "would need to test other flavors from the brand to get a better sense of the concern." Harper Decl., Ex. 1 at 14. And the plaintiff in *Levy* bought the defendant's chocolate "almost on a weekly basis" and therefore was plausibly exposed to "at least one" product with lead, 2024 WL 897495, at *3–4, while Plaintiff alleges she bought the Beets n' Berries and Mango Carrot flavors *once* in April 2023 the Carrot Raspberry and Mixed Red Berries flavors as many as three-

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

and-a-half years before the testing.  Compl. ¶ 40.  *Levy* required much more than Plaintiff offers.[8]

Here, Plaintiff's very reason for alleging the Snacks contain heavy metals—the Lead Safe posts—explain why differing ingredients in the differing flavors of the Snacks mean each will likely have different heavy metal levels.  FDA's 2025 Guidance also affirms that fruit and non-root vegetables will tend to have lower levels of lead compared to single-root vegetables.  Harper Decl., Ex. 7 at 9.

Last, as to Plaintiff's standing to sue over the Mighty Sweet Greens flavor, which she did not purchase, Amara acknowledges the case law splits.  But in this case the stronger reasoning is that Plaintiff does not have standing to sue over un-purchased products because the Snacks are *not* so similar that "an individualized factual inquiry [is] not needed for each product."  *Stephenson v. Neutrogena Corp.*, 2012 WL 8527784, at *1 (N.D. Cal. July 27, 2012) (no standing to sue over unpurchased products).  To the contrary, Plaintiff concedes the Snacks are made of materially (and even completely) different ingredients and the very test results inspiring her claims acknowledge the significance of these differences.  Mot. 12.

Thus, Plaintiff is not entitled to the unreasonable inference that the Snacks she purchased contained heavy metals, so she fails to allege particularized injury.

**B.   Plaintiff Lacks Standing Even If She Alleged the Snacks Contained Heavy Metals.**

Amara further explained that even if Plaintiff plausibly alleged the Snacks she purchased contained heavy metals, she still fails to allege concrete injury.[9] Plaintiff dodges this argument by adding "additional allegations" in her Opposition

---

[8] Plaintiff's last case, *Grausz*, permitted claims to proceed based on untested products, but is not persuasive because it did not meaningfully engage with the question raised here.  *See* 691 F. Supp. 3d at 1188.  The *Grausz* court simply assumed without analysis that the product the plaintiff purchased "contained heavy metals."  *Id.*

[9] For these same reasons, Plaintiff's claims should be dismissed under 12(b)(6) for failure to allege any injury or harm.  Mot. 16.

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

not found in her Complaint, Opp'n 2, and switching from the "benefit-of-the-bargain" losses she alleged, Compl. ¶ 51, to an un-alleged price-premium theory based on the "risk"—not the actual presence—of heavy metals. Opp'n 11. This bait-and-switch fails not only because Plaintiff cannot amend her Complaint in opposition, but also because it does not fix the fundamental problems identified in the Motion.

**First**, Plaintiff fails to allege the Snacks she received, even if they contained the alleged heavy metals, are "worth less" than what she thought she was getting, *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 705–06 (9th Cir. 2020) (quotation omitted), because she offers no allegations that the specific levels of heavy metals alleged in the Snacks are harmful. Mot. 13. Plaintiff offers what she calls "additional allegations" in support of her argument that the amount of heavy metals in the Snacks are harmful but her theory remains that any level of heavy metals is dangerous. Opp'n 3–4. Courts reject this theory because it would permit claims against any product with even trace amounts of naturally occurring heavy metals. Mot. 13–14. The case law does not contemplate the profound uncertainty this non-standard would create for all farmers, retailers, and food producers.

Instead, the case law by and large requires a plaintiff to allege facts from which to infer the specific amount of heavy metals in a product is harmful. Because saying "any heavy metals are harmful" is not workable, plaintiffs tie their allegations to established standards for harm. *Id.* at 13. Here, Plaintiff fails (in the Complaint and Opposition) to identify a single applicable regulation or guideline that the Snacks allegedly exceed. *See id.* at 14. She concedes the Snacks' alleged heavy metal content does not exceed any identified OEHHA limits and that the Baby Food Safety Act never passed (and therefore does not "provide[] persuasive guidance" at all). Opp'n 5. She says she never compared the Snacks to the action levels for bottled water and that her allegation at paragraph nine of the Complaint that the Snacks exceeded an unidentified 5 ppb "FDA Guidance Action Level"

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

actually referred to the Baby Food Safety Act. *Id.* at 5 n.3. But that is surprising because the Baby Food Safety Act never set "FDA Guidance Action Levels." In any event, it is Plaintiff's burden to state her claims, not Amara's (or the Court's) to divine them. And, wherever she got this arbitrary 5 ppb figure, it is just that—arbitrary and unrelated to the Snacks.

Plaintiff instead hangs her hat on FDA's 2025 Guidance, arguing the Snacks are subject to the Guidance even though they are freeze-dried snack puffs. Opp'n 1, 4. But the Guidance carves out "snack foods," including "freeze-dried snacks" like "puffs." Harper Decl., Ex. 7 at 4. Plaintiff herself calls the Snacks "snack[s]." Compl. ¶ 47. The Snacks' label, on which she relies, describes the Snacks as "Plant-Based Yogurt Snack[s]" and refers to the Snacks as "snacks" two more times. *Id.* ¶ 21. Even the testing that inspired this case refers to the Snacks as "snacks." *Id.* ¶ 24. The Snacks are snacks and Plaintiff does not plausibly allege otherwise. The 2025 Guidance therefore does not apply to the Snacks, and Plaintiff is left with nothing but the bare allegation that any level of heavy metals is sufficiently harmful to allege economic losses. This is insufficient to establish economic injury.

*Boysen* is the roadmap for this analysis, and Plaintiff's attempt to distinguish it does not persuade. *See* Mot. 13–14. Plaintiff points out that, in *Boysen*, the alleged heavy metals in the fruit juices were below FDA action levels for fruit juices, Opp'n 12–13, but that fact was not necessary to the *Boysen* court's ruling. *Boysen* followed *In re Fruit Juice Products Marketing and Sales Practices Litigation*, 831 F. Supp. 2d 507 (D. Mass. 2011), which, as relevant here, reasoned the plaintiffs lacked standing *not* because the alleged heavy metal levels were *affirmatively safe*, but rather because the plaintiffs *failed to allege they were unsafe*: "The products have not been recalled, have not caused any reported injuries, and do not fail to comply with any federal standards." *Boysen*, 2012 WL 2953069, at *4 (quoting *In re Fruit Juice*, 831 F. Supp. 2d at 512). That the alleged levels did not

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

exceed the relevant FDA guidance was further support for the *Boysen* court's ruling, but it did not invert the basic reasoning that a plaintiff must allege the alleged levels of heavy metals are harmful.  *Id.* at *6 ("As [in *In re Fruit Juice*], plaintiff has failed to allege noncompliance with *applicable* federal standards.").[10]

To this point, most of Plaintiff's cases alleged heavy metal content *in excess of applicable standards.  See Boyd*, 2025 WL 84631, at *1 (alleged heavy metal levels exceeded FDA reference levels and California Proposition 65 levels); *Rodriguez*, 703 F. Supp. 3d at 1205 (same; Proposition 65 levels); *Grausz*, 691 F. Supp. 3d at 1185 (same); *In re Trader Joe's Co. Dark Chocolate Litig.*, 726 F. Supp. 3d 1150, 1172 (S.D. Cal. 2024) (same); *In re Theos*, 2024 WL 4336631, at *1 (same); *Levy*, 2024 WL 897495, at *1 (same); *Castillo*, 2024 WL 4133815, at *1 (same; levels set by Environmental Protection Agency).  The plaintiffs in *Balistreri*, *Barnes*, *Gagetta*, and *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837 (N.D. Cal. 2018), did not identify applicable standards, but they crossed other thresholds Plaintiff here fails to meet, as explained elsewhere in this Reply.

Likewise Plaintiff's argument that, here, "the labels are independently deceptive," Opp'n 12, does not distinguish *Boysen*.  *Boysen* dismissed the same argument.  The plaintiff there "allege[d] that defendant's omissions as to the presence of these toxins are false and misleading, especially in light of the juice labels' affirmative representations that the products are healthy and safe."  2012 WL 2953069, at *1.  *Boysen* disagreed that its reasoning was "inconsistent with[] California law regarding standing in false advertising cases."  *Id.* at *5.  In this respect, *Boysen* correctly characterizes Plaintiff's case as, in essence, a product liability claim.  The gravamen of Plaintiff's case is not that the Snacks' labels do or

---

[10] In fact, *Boysen* only addressed the fact that the fruit juices complied with applicable FDA standards in response to the plaintiff's argument—like Plaintiff's here—that the heavy metals in the fruit juices exceeded *irrelevant* federal standards. 2012 WL 2953069, at *5.  That the fruit juices were *not alleged to be unsafe* remained the key reasoning.

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

do not say one thing or another; it is that she would never buy a product with trace heavy metals no matter what the labels said. She "would not have purchased the Products [even] if the heavy metals had been disclosed." Opp'n 9. This theory requires plausible allegations that the Snacks were unfit for their purpose, which Plaintiff fails to allege.

In a last attempt to escape *Boysen*, Plaintiff's Opposition argues for a theory of loss she did not allege—namely, Plaintiff pled that the Snacks she purchased *actually* contained heavy metals, then shifts in her Opposition to argue her harm was that the Snacks *risked* containing heavy metals. This distinction matters both under the caselaw, and also will have implications throughout the case. *See Gagetta*, 646 F. Supp. 3d at 1174 (distinguishing *Boysen* on this ground and explaining significance). The bulk of Plaintiff's authority is distinguishable because those plaintiffs alleged the theory that the products risked a defect (per *Gagetta*), not that they actually contained the defect (per *Boysen*). *See Bowen III*, 118 F.4th at 1146 (plaintiff alleged overpayment losses where she alleged "benzene was *or risked being* contained in the sunscreen products she purchased" (emphasis added)); *Balistreri*, 2023 WL 5988600, at *4 (same; "the Products contained (*or risked containing*) Heavy Metals" (emphasis added)); *Barnes*, 2022 WL 4283779, at *4 (same; "the inclusion, *or risk of inclusion*, of Heavy Metals was not disclosed on the label" (emphasis added)); *In re Trader Joe's*, 726 F. Supp. 3d at 1172 (same; "Products contained (or had *a material risk of containing*) Heavy Metals" (emphasis added)); *In re Theos*, 2024 WL 4336631, at *1 (same; products "contain[ed] (or [were] *at risk of containing*) cadmium, lead, and arsenic"). Plaintiff encourages the Court to follow *In re Plum Baby Food Litig.*, 2022 WL 16640802, at *1 (N.D. Cal. Jan. 12, 2022), but its ruling is unreasoned. Finally, *Zeiger* is also a price-premium case (though the plaintiff did not allege a "risk" that the products contained heavy metals). *See* 304 F. Supp. 3d at 846. Nevertheless, it was authored by the same judge as the later *Gagetta*.

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

In sum, Plaintiff identifies no case that asks as much as she does of this Court: that the Court find Plaintiff has standing despite alleging claims based on disparate, untested products, without identifying any applicable safety threshold the Snacks allegedly exceed, on the economic loss theory rejected in *Boysen*.

**Second**, Plaintiff fails to allege benefit-of-the-bargain losses for the additional reason that her assumption the Snacks contained zero heavy metals was not part of the bargain. Mot. 14–15. Plaintiff says it is *possible* to produce food without heavy metals, Opp'n 13, but that is not the point—the point is that the Snacks do not promise to be free of heavy metals and any assumption that they would be free of even trace heavy metals was unreasonable, so a Snack completely free of heavy metals was not part of the bargain. Mot. 14–15. Plaintiff does not convincingly distinguish *McGee* or *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009), which stand for the simple premise—applicable here—that benefit-of-the-bargain losses require that the benefit be part of the bargain. Plaintiff's best response is that she no longer alleges "benefit-of-the-bargain" losses, Compl. ¶ 51, but the Court should not permit this bait-and-switch. In any event, Plaintiff's new overpayment theory fails as explained above.

## C.    The Court Should Refer the Case to FDA Under the Primary Jurisdiction Doctrine.[11]

As noted above, Plaintiff's standing argument fails in part because the 2025 Guidance does not apply to the Snacks, which are a "snack food" on their face carved out from the Guidance. *See* § II.B, *supra*. Plaintiff admits the question of whether the 2025 Guidance applies the Snacks must be resolved, Opp'n 10 n.5, but

---

[11] Amara did not raise a primary jurisdiction argument in its Motion becuase the issue was not presented at that time. Plaintiff's Complaint alleged the Snacks exceeded the *draft* guidance, Compl. ¶ 39 & n.31 (citing draft guidance), which did not carve out snack foods, because FDA issued its 2025 Guidance after Plaintiff filed her Complaint. And because the carve out facially applies to the Snacks, Amara did not anticipate a primary jurisdiction issue arising. But Plaintiff's unexpected position that the "snack" carve out does not apply to the Snacks raises the issue, which Amara addresses in this Reply.

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

she balks at the Guidance's plain language and argues the Snacks are *not* "snack food," but rather are yogurt.  *Id.* at 1, 4–5.  Her argument is unpersuasive and the Court can dismiss without deciding it by ruling Plaintiff failed to allege facts plausibly showing the Snacks are "yogurt."  But to the extent the Court feels this question cannot be resolved on the pleadings it should refer the question to FDA to determine what constitutes "snack food" in the first instance.  In *Cuevas v. Topco Associates, LLC*, this Court appropriately stayed a case alleging almond milk was not "milk" under FDA regulations pending resolution of the referral of that question to FDA under the primary jurisdiction doctrine, and the Court should follow the same path here.  *See* 2017 WL 11634779, at *4 (C.D. Cal. July 18, 2017) (Carter, J.) (staying case based on referral to FDA in *Kelley v. WWF Operating Co.*, 2017 WL 2445836 (E.D. Cal. June 6, 2017)).

"Primary jurisdiction is a prudential doctrine that permits courts to determine that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch."  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) (quotation omitted).  Courts consider: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration."  *Id.* (quotation omitted).

Here, Plaintiff's only standing argument is that the 2025 Guidance is applicable to the Snacks.  *See* § II.B, *supra*.  Finding Plaintiff had standing without identifying any applicable guidance would not only jeopardize countless products with trace heavy metals not shown to cause any harm, but also would ignore FDA's express preference to take a measured approach to reducing heavy metal content in foods—and obviate the purpose of action levels altogether.  Plaintiff therefore

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

REPLY ISO MOTION TO DISMISS COMPLAINT

argues the Snacks exceed the 2025 Guidance, making that Guidance important to this case.

Moreover, FDA should decide what constitutes "snack food" because that determination falls squarely within its regulatory ambit and its decision would be broadly applicable to countless snack products. FDA has shown evident and ongoing interest in this area, issuing the Guidance at issue just this month. *See Kelley*, 2017 WL 2445836, at *4 (that Congress delegated authority to administer applicable regulatory scheme to FDA counseled primary jurisdiction). The question of what constitutes a "snack food" appears to be one of first impression. *See id.* (whether almond milk was "imitation" milk question of first impression, which counseled primary jurisdiction). Judicial intervention on this question would usurp FDA's active and ongoing efforts to make "product-specific considerations" regarding acceptable heavy metal content in foods. Mot. 5. FDA has cautioned this process requires careful balancing of considerations uniquely within FDA's expertise—and lacking in the courts. *See Kelley*, 2017 WL 2445836, at *5 (fact that determination of whether almond milk was "imitation" milk would require FDA expertise counseled primary jurisdiction). Indeed, that FDA affirmatively carved out "snack foods" strongly indicates the definition is meaningful. Piecemeal court adjudication of this question risks inconsistent results.

In sum, to the extent the Court believes it is necessary to resolve as a factual matter whether the Snacks are "snack food" exempt from the Guidance, this case, like *Kelley* and *Cuevas*, should be stayed and the Court should "refer" the question to FDA. *See Kelley*, 2017 WL 2445836, at *6 ("The Court therefore finds the doctrine of primary jurisdiction should apply here, and the case is accordingly referred to the FDA."); *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 782 n.3 (9th Cir. 2002) ("'Referral' is the term of art"; "[i]n practice, it means that a court either stays proceedings, or dismisses the case without prejudice, so that the parties may pursue their administrative remedies").

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

REPLY ISO MOTION TO DISMISS COMPLAINT

1

### IV.    CONCLUSION

2        The Court should dismiss Plaintiff's claims with prejudice because she

3  cannot allege facts that would save her case and remain consistent with those

4  alleged here.

5  DATED: January 27, 2024                DAVIS WRIGHT TREMAINE LLP
                                           JACOB HARPER (SBN 259463)
6                                          ASHLEY VULIN (*pro hac vice pending*)

7

8                                          By: /s/ *Jacob M. Harper*
                                                    Jacob M. Harper
9
                                           Attorneys for Defendant
10                                         PATAFOODS, INC. d/b/a Amara Organic
                                           Foods, Inc.
11

12                                         The undersigned, counsel of record for
                                           Defendant, certifies that this brief contains
13                                         6,673 words, which complies with the
                                           word limit of L.R. 11-6.1.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

REPLY ISO MOTION TO DISMISS COMPLAINT